# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

### STATE v. SMITH.

### Opinion delivered June 7, 1909.

1. BANKS—FRAUDULENT ACCEPTANCE OF DEPOSIT.—An indictment of a bank cashier for fraudulently accepting a check on deposit when he knew that the bank was insolvent was not defective in failing to allege the date and the name of the drawer of the check, where the check is sufficiently identified by stating the name of the drawee and payee and the amount of the check. (Page 3.)

2. SAME—FRAUD—ACCEPTANCE OF DEPOSIT.—An indictment of a cashier of an insolvent bank for fraudulently receiving on deposit a check from one G. should be understood to mean that the deposit was made by G. for his own account. (Page 4.)

3. SAME—FRAUD—SUFFICIENCY OF INDICTMENT.—An indictment of the cashier of an insolvent bank for fraudulently receiving a check on deposit need not state whether the check was received as a general or a special deposit. (Page 4.)

4. SAME—FRAUDULENT BANKING—CONSTRUCTION OF STATUTE.—Kirby's Digest, § 1814, making it a felony for an insolvent bank to receive on deposit any bank bills or notes or United States treasury notes, "or other notes, bills or drafts circulating as money," by the phrase quoted refers to notes, bills or drafts (other than United States treasury notes and national bank notes) which are payable to bearer or are properly indorsed by the payee, so as to pass from hand to hand. (Page 4.)

5. SAME—FRAUDULENT BANKING—ACCEPTANCE OF CHECK.—An indictment of a bank cashier for fraudulently receiving on deposit from G. a check payable to B. is defective in failing to allege either that the check was indorsed by B. or that it was an obligation which circulated as money. (Page 4.)

6. SAME—SUFFICIENCY OF INDICTMENT OF CASHIER.—An allegation, in an indictment of the cashier of an insolvent bank for fraudulently accepting a check on deposit, that the check was accepted by defendant in lieu of money is not equivalent to an allegation that the check was circulating as money. (Page 5.)

Appeal from Ouachita Circuit Court; *George W. Hays,* Judge; affirmed.

*Hal L. Norwood,* Attorney General, and *C. A. Cunningham,* Assistant, for appellant.

The ruling on the demurrer is the only question raised by the State's appeal, as defendant did not appeal. Kirby's Dig. § 1225; 44 Ark. 25. The description in the indictment is sufficient to put defendant on notice as to the offense charged, and enable him to plead former acquittal or conviction. 26 Ark. 332; 27 *Id.* 498; 34 *Id.* 159; 98 N. C. 773; 71 *Id.* 176. The meat of the offense is accepting the check as a deposit, and it makes no difference to whose credit it was deposited; nor does its date cut any figure. It is evident the check was indorsed. 79 Ia. 432; 65 N. W. 309; 6 N. E. 123; 7 *Id.* 763; 107 *Id.* 94.

The indictment sets out every fact necessary under § 1814, Kirby's Dig. 163 Pa. St. 142.

McCULLOCH, C. J. The circuit court sustained a demurrer to an indictment in the following form (omitting caption and formal parts) : "The said defendant, on the 3rd day of October, 1904, in Union County, Arkansas, then and there being the cashier of the Bank of El Dorado, said Bank of El Dorado being a corporation, with its home office located in the town of El Dorado, Union County, Arkansas, did unlawfully, wilfully, knowingly and feloniously accept and receive on deposit in said Bank of El Dorado, of and from G. D. Yocum, a certain bill of exchange for $974.61, commonly called and known as a check, which was signed and drawn by J. R. Burns and payable to Miss Bobbie Yocum, said bill of exchange so commonly called and known as a check aforesaid, then and there being accepted and received on deposit in said Bank of El Dorado by the said defendant in lieu of money, the said Bank of El Dorado then and there being insolvent, and the said E. H. Smith then and there being the cashier of said bank, and well knowing at the time he so accepted and received on deposit said bill of exchange, so commonly called and known as a check as aforesaid, that said Bank of El Dorado was then and there insolvent."

The points of attack upon this indictment are set forth in the demurrer as follows :

"1st. The date of said check is not stated, nor does the indictment allege that said date was unknown to the grand jury.

"2nd. The name of the bank, corporation, firm, company or person on whom said check was drawn by J. R. Burns is not stated, nor does the indictment allege that same was unknown to the grand jury.

"3rd. The indictment fails to state to whose account said check was deposited by the said G. D. Yocum, or for whose account it was accepted and received by the defendant.

"4th. The indictment fails to state whether the check referred to therein was accepted by the defendant as cashier of the Bank of El Dorado as a general deposit, thereby becoming a part of the funds of said bank, or on special deposit, as bailee of the owner of same.

"5th. The indictment fails to state whether the check referred to therein was indorsed by Miss Bobbie Yocum to G. D. Yocum, or whether the said G. D. Yocum was the owner of said check, and as such deposited same, or whether in the deposit of said check he acted as the agent of the payee or other person.

"6th. The indictment fails to allege that the check referred to therein circulated as money, as required by the statute."

The statute under which the indictment is preferred reads as follows: "No bank shall accept or receive on deposit, with or without interest, any money, bank bills or notes, or United States treasury notes, gold or silver certificates, or currency, or other notes, bills or drafts, circulating as money, or currency, when such bank is insolvent; and any officer, director, cashier, manager, member, party or managing party of any bank who shall knowingly violate the provisions of this section, or be accessory to, or permit or connive at the receiving or accepting on deposit of any such deposit, shall be guilty of a felony, and upon conviction thereof shall be imprisoned in the State Penitentiary not less than three years and not more than five years." Act Feb. 12, 1901, Kirby's Digest, § 1814.

We are of the opinion that the first and second grounds set forth in demurrer are not well taken. The check was fully identified by the description given in the indictment, without stating the name of drawer or the date of the check. The name of the drawee is stated, the name of the payee and the amount of the

check. This, we think, is sufficient to fully identify the check so that the defendant could plead former acquittal or conviction to a second indictment.

The third ground is likewise without substantial foundation. The indictment charges that the deposit was received from G. D. Yocum. This could only be understood to mean that the deposit was made by G. D. Yocum for his own account, and was so accepted by the defendant. *State* v. *Cadwell,* 79 Iowa 432.

There is no merit in the fourth ground of demurrer. The statute makes no distinction between general and special deposits, so far as this offense is concerned, and it is unnecessary to allege in the indictment the particular character of deposit—whether general or special. It is sufficient to allege that the funds, etc., were deposited.

The fifth and sixth grounds of the demurrer relate to the same point, and should be considered together. The allegations of the indictment are to the effect that the check deposited by G. D. Yocum was one drawn by J. R. Burns in favor of Miss Bobbie Yocum, but it is neither alleged in terms that the check was indorsed by the payee nor that it was an obligation which circulated as money.

It is not altogether clear what the Legislature meant by the words "other notes, bills or drafts, circulating as money, or currency." Literally construed, there are no "notes, bills or drafts" which circulate as money or currency except United States treasury notes and national bank notes, and it is obvious that the Legislature did not refer to these in using this language, for they are especially mentioned in the statute. If any meaning at all be given to this language, it must be held to refer to notes, bills or drafts (other than United States treasury notes and national bank notes) which pass from hand to hand; that is to say, such as are payable to bearer or are properly indorsed by the payee, so that the legal title may pass by delivery.

Now, applying this test, the allegations of the indictment do not sufficiently describe the check so as to bring it within the terms of the statute. It is not alleged, either in general terms that it was a "note or draft circulating as money or currency," or that the check which was drawn payable to Miss Bobbie Yo-

cum was ever indorsed by her so that the legal title might pass by delivery.

It is contended on behalf of the State that the allegation of the indictment to the effect that the check was accepted by the defendant in lieu of money was equivalent to an allegation that it was a draft circulating as money. We do not think so. The meaning of the two statements is altogether different. One is descriptive of the written instrument, and the other refers entirely to the manner of acceptance of the paper. It may as well be said that an allegation of acceptance on deposit of a horse or bale of cotton in lieu of money would bring it within the statute.

The statute must be strictly construed, and in order to make out a charge under it the language must state facts within its express terms.

Affirmed.